**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

NANCY ANN BURKE, as Personal
Representative for the Estate of DAVID K.
BURKE, and NANCY ANN BURKE,
individually, and RUSSELL DAVID
BURKE, and JEFFREY JOHN BURKE, and
KATHERINE ELIZABETH BURKE, and
VICTORIA JANE BURKE,

       Plaintiffs,

v.

WINNEBAGO INDUSTRIES, INC.,
LIPPERT COMPONENTS, INC., and LCI
INDUSTRIES,

       Defendants.

_____/

Civil Action No.: 21-3020

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COME NOW** Plaintiffs, by and through undersigned, and files this civil action for recovery of harms, losses, and damages caused by Defendants, Winnebago Industries, Inc. ("Winnebago"), Lippert Components, Inc. ("Lippert"), and LCI Industries ("LCI"), and, in support thereof, state:

1.    At least as early as February 2016, LCI Industries, through its wholly owned subsidiary, Lippert Components, Inc., had actual knowledge of defective and unsafe retractable steps supplied to Winnebago and fitted on Winnebago-branded motorcoaches ("Motorhomes").

2.    Specifically, LCI and Lippert knew that component parts within Kwikee-branded electronic retractable steps were prone to failure – failures likely to cause injury and/or death.

3.    Despite this knowledge, LCI, Lippert, and Winnebago each failed to warn the Burke family of the dangers posed by the Kwikee step that Winnebago chose to fit on the 2013

Winnebago Adventurer motorhome sold new by Winnebago to the Burke family.

4.    In summer 2019, David and Nancy Burke set out on a cross-country trip in their Winnebago motorhome—a trip which would cost David Burke his life following a fall caused by failure in the Kwikee-branded electronic retractable steps.

5.    While exiting his Winnebago motorhome at Garden of the Gods campground, David Burke—a decorated United States Air Force pilot and member of the Civil Air Patrol with experience flying more than 800 combat missions in Vietnam, the United Kingdom, and elsewhere—was thrown to the ground when Winnebago's Kwikee-branded retractable step failed, shearing a rivet, and partially collapsing without warning.

6.    Upon impact (hereinafter, the "Subject Fall"), Mr. Burke experienced a massive traumatic brain injury through temporal skull fracture resulting in subarachnoid hemorrhaging, subdural hemorrhaging with midline shift and tonsillar herniation, among other injuries.

7.    Upon information and belief, David K. Burke languished, suffering in pain as a result of his injuries over a period of several hours.

8.    Despite rapid medical intervention including through an emergency craniotomy, David Burke succumbed to his injuries and passed away on August 9, 2019.

9.    This action is brought for recovery of damages stemming from harms, losses, and injuries sustained by Nancy Burke, as the Personal Representative of the Estate of David K. Burke, the Estate of David K. Burke itself, as well as adult children, Russell D. Burke, Jeffrey J. Burke, Katherine E. Burke, and Victoria J. Burke, with reservation of right to amend.

## JURISDICTION AND VENUE

10.    Defendant, Winnebago Industries, Inc. (hereinafter, "Winnebago"), an Iowa Corporation, is a business entity with its principal place of business in Forest City, Iowa.

Winnebago transacts business throughout the United States of America. Winnebago designed, manufactured, and sold or distributed the motorhome—a 2013 Adventurer 35P bearing Serial Number 1F66F5DY2C0A06928 and Stock Number 81345 (hereinafter "Subject Motorhome")—that was purchased new by David Burke and Nancy Burke on or about May 14, 2013 and which was, at the time of purchase, equipped with the Kwikee-branded electronic retractable steps at issue in this action.

11.     Defendant, Lippert Components, Inc. (hereinafter, "Lippert"), a Delaware Corporation, is a business entity with its principal place of business in Elkhart, Indiana.  LCI transacts business throughout the United States of America, including here in Iowa.  LCI designed, manufactured, and sold or distributed the Kwikee-branded electronic retractable steps at issue in this action—labeled the "25 Series Step" and containing Part Number 902509100—that was mounted on the Subject Motorhome (the "Defective Step") at the time the Subject Motorhome was purchased by David Burke and Nancy Burke on or about May 14, 2013.

12.     Defendant, LCI Industries (hereinafter, "LCI"), a Delaware Corporation, is a business entity with its principal place of business in Mishawaka, Indiana.  LCI transacts business throughout the United States of America, including here in Iowa.  LCI designed, manufactured, and sold/distributed the Kwikee-branded electronic retractable steps at issue in this action—labeled the "25 Series Step" and containing Part Number 902509100—that was mounted on the Subject Motorhome (hereinafter, the "Defective Step") at the time the Subject Motorhome was purchased by David Burke and Nancy Burke on or about May 14, 2013.

13.     At the time of his death and at all times material hereto, David K. Burke was the legal spouse of and cohabitant with Nancy A. Burke, then-residing in Hollister, Missouri.

14.     At the time of David Burke's death and at all times material hereto, Nancy A. Burke was the legal spouse of and cohabitant with David Burke, then-residing in Hollister, Missouri.

15.     At the time of David Burke's death and at all times material hereto, Russell D. Burke was the adult biological son of the decedent David K. Burke, residing in Maui, Hawaii.

16.     At the time of David Burke's death and at all times material hereto, Jeffrey J. Burke was the adult biological son of the decedent David K. Burke, residing in Bonner Springs, Kansas.

17.     At the time of David Burke's death and at all times material hereto, Katherine E. Burke was the adult biological daughter of the decedent David K. Burke, residing in Kansas City, Kansas.

18.     At the time of David Burke's death and at all times material hereto, Victoria J. Burke was the adult biological daughter of the decedent David K. Burke, residing in Olathe, Kansas.

19.     The damages sought in this matter significantly exceed the jurisdictional limits for this Federal District Court under 28 U.S.C. § 1332.

20.     This Court has subject matter jurisdiction over this matter.

21.     Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(a).

## GENERAL FACTUAL ALLEGATIONS

22.     On or about May 14, 2013, David Burke and Nancy Burke jointly purchased the Subject Motorhome.

23.     Upon information and belief, the Subject Motorhome was purchased "new," in a condition identical or substantially similar to the condition the Subject Motorhome was in when it left the possession of Winnebago.

24.     Upon information and belief, the Subject Motorhome was first delivered to the Burke's with the subject Defective Step already installed.

25.     Upon information and belief, the subject Defective Step was purchased "new," in a condition identical or substantially similar to the condition the subject Defective Step was in when it left the possession of Lippert and/or LCI.

26.     Upon information and belief, the Burke's never materially altered, changed, and/or damaged the subject Defective Step at any time following initial purchase until the date of the Subject Fall.

27.     There is no evidence, physical or otherwise, to indicate the Burkes did anything to the subject Defective Step (or failed to do anything) to make the subject Defective Step any less safe than when the subject Defective Step left the possession of Lippert and/or LCI and then Winnebago.

28.     That said, the Burke's took great care to maintain the Subject Motorhome, going so far as to seek maintenance directly from Winnebago at Winnebago-run and/or Winnebago-approved maintenance facilities, including, upon information and belief, Winnebago-owned or operated facilities in Forest City, Iowa.

29.     Despite Winnebago taking possession of the Subject Motorhome several times for routine maintenance, Winnebago never notified the Burke's that the Subject Motorhome contained a defective step or step equipment.

30.     Upon information and belief, Winnebago never repaired, maintained, replaced, or made safe the subject Defective Step equipped on the Burke's Motorhome.

31.     Similarly, upon information and belief, Winnebago never warned the Burkes of any dangerous condition within the subject Defective Step, nor did Winnebago ever warn or instruct the Burkes not to use the subject Defective Step.

32.     Upon information and belief, Winnebago never remedied or recalled the subject Defective Step, despite notice and knowledge of Winnebago (either actual or constructive) that other substantially similar steps had been recalled by the same manufacturer for issues relating to the safe operation and stability of step systems.

33.     The Burkes were never notified of recalls affecting the subject Defective Step or other substantially similar steps.

34.     Similarly, Lippert and LCI never remedied or recalled the subject Defective Step, despite notice and knowledge of Lippert and LCI (either actual or constructive) that other substantially similar steps had been recalled by the same manufacturer for issues relating to the safe operation and stability of step systems.

35.     Upon information and belief, Lippert and/or LCI designed and/or manufactured the subject Defective Step without involvement of a successor corporation or other entity.

36.     Alternately, Lippert and/or LCI assumed liability for the subject Defective Step when Lippert and/or LCI acquired the manufacturing and/or design business of a predecessor, continuing the output of the same—output which included the subject Defective Step.

PRIOR COMPLAINTS OF STEP FAILURE

37.     In the approximately six (6) year period during which the Burke's owned the Subject Motorhome, Winnebago, Lippert, and LCI were all on actual and constructive notice of the same dangerous and defective condition as existed within the subject Defective Step, including

through public complaints raised by consumers and, upon information and belief, private complaints sent directly to Winnebago, Lippert, and/or LCI.

38.     So widespread and dramatic was the problem with Lippert/LCI's step systems like the subject Defective Step, a secondary market emerged—at least as early as 2015—for the sale of aftermarket safety systems/tools designed to prevent the type of fall, injury, and death suffered by Mr. Burke.

39.     Unfortunately, prior to the Subject Fall, the Burke's were never made aware of these other, aftermarket safety systems.

40.     One such system – the "SOLID STANCE STEP" KIT – was marketed and sold by the predecessor of Lippert/LCI—the same companies that sold and/or distributed the subject Defective Step at issue in this action.

41.     As early as 2015, customers publicly complained of dangerous collapse, "flex," "spong[iness]," "free play," and even broken rivets – the same condition which caused or contributed substantially to the death of Mr. Burke.

42.     Concerned customers even went so far as to publicly brainstorm a safety solution which, to date, Winnebago, Lippert, and LCI have been unwilling to design, manufacture, and sell.

43.     These customer-designed solutions include the use of more robust component parts and, while never deployed, may very well solve the problem at issue in the Burkes' motorhome, through the implementation and use of simple and extremely inexpensive shims or ball bearings—like those used in rollerblades, skateboards, and many other inexpensive consumer products.

### ALTERNATIVE STEP DESIGNS

44.     At the same time, Lippert and LCI have been more than willing to accept customer's money in exchange for a much safer step system – the Lippert "SOLID STEP."

45.     According to Lippert and LCI, their "customers asked for a BETTER RV ENTRY STEP… and [they] listened."

46.     Referring to step systems like the subject Defective Step, Lippert and LCI derided, "RVers had to settle for the common RV entry step that hadn't been updated in decades…"

47.     In so doing, Lippert and LCI freely admitted, "clearance on the old standard entry steps has always been an issue… the RVer has very little clearance between the door threshold and the first step… making getting in and out of the RV tricky, especially in the dark."

48.     Lippert and LCI further admitted that it had actual knowledge of the fact that the standard steps – like the subject Defective Step – were "NOT FIRM ENOUGH" with a "spongy" or "bouncing" feeling "not ideal for those without their best balance."

49.     In response, Lippert and LCI created the "SOLID STEP" – a stabilized step system capable of preventing or minimizing the Subject Fall and death of Mr. Burke.

50.     Upon information and belief, Lippert and LCI created the "SOLID STEP" with enough time to prevent the death of Mr. Burke.

51.     However, the Burkes were never notified by Winnebago, Lippert, or LCI of the danger posed by the subject Defective Step nor of alternative designs reasonably likely to prevent or minimize the risk of death to Mr. Burke, whether the alternative design be the "SOLID STEP," "SOLID STANCE," other stabilizers, stronger rivets and/or bolts, or the use of shims, bearings, or other rotatable hardware.

## COUNT I
## NEGLIGENCE OF WINNEBAGO INDUSTRIES, INC.

52.     Plaintiff realleges paragraphs 1 through 51, as if fully set forth herein.

53. Prior to the Subject Fall, Winnebago knew—or in the exercise of due care, should have known—that the Subject Winnebago would be used in the condition and manner in which it was used on the day and at the time of the Subject Fall.

54. Specifically, prior to the Subject Fall, Winnebago knew—or in the exercise of due care, should have known—that the subject Defective Step would be used in the condition and manner in which the subject Defective Step was used on the day and at the time of the Subject Fall.

55. Accordingly, Winnebago created a foreseeable zone of risk that ordinary users of the Subject Winnebago would be harmed by defects present within the subject Defective Step, including by one or more of the unreasonably dangerous conditions outlined herein.

56. More egregiously, Winnebago targeted retirees, senior citizens, and individuals with disabilities—all individuals at a higher risk of being injured and/or killed by a defective step system—thereby creating a heightened foreseeable zone of risk that the aforementioned individuals would be harmed by defects present within the subject Defective Step, including by one or more of the unreasonably dangerous conditions outlined herein.

57. Specifically, Winnebago created a foreseeable zone of risk that users—including Mr. Burke—would be catastrophically injured or killed by any failure of the subject Defective Step, including in the creation or exacerbation of instability during extension, retraction, movement, and/or general use of the same.

58. Such a failure was foreseeable to Winnebago, as the Subject Winnebago was designed, manufactured, advertised, marketed, distributed, and/or sold in such a way as to require the use of a step system—like the subject Defective Step—in order to enter and exit the Subject Motorhome.

59.     On August 9, 2019, Winnebago's product—the Subject Motorhome—failed, at the subject Defective Step, shearing a rivet and partially collapsing without warning.

60.     **DUTY.**  Defendant, Winnebago, had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings and instructions for the subject Defective Step while also packaging, distributing, and selling the subject Defective Step in a reasonably safe condition so as not to present an unreasonable danger to end users—including Mr. Burke—who reasonably and expectedly, under ordinary circumstances, would use and come into contact with the subject Defective Step at the time of failure.

61.     **BREACH.**  Defendant, Winnebago, breached its duty to Plaintiff in one or more of the following ways:

   a. Selling the Subject Motorhome and component parts while the same were in such an unreasonably dangerous and defective manner as to permit the subject Defective Step to fail, including through:
      i. Failing to design, manufacture, and/or require vendors and/or parts sellers to provide a step system capable of preventing, minimizing, and/or warning of collapse or partial collapse;
      ii. Failing to include redundancies capable of preventing, minimizing, and/or warning of collapse or partial collapse;
      iii. Failing to require vendors and parts sellers, designers, and manufacturers to use only reliable and safe internal components—including within the subject Defective Step—so as to prevent unreasonable and/or unnecessary wear, stress, and/or movement of critical parts;
      iv. Failing to require vendors and parts sellers, designers, and manufacturers to use only component parts of proper size, dimension, and weight;
      v. Failing to require vendors and parts sellers, designers, and manufacturers to use only raw materials for component parts—including within the subject Defective Step—which are capable of enduring the ordinary forces associated with repeated extension, retraction, and use without collapse or partial collapse of step systems;

<ol type="i" start="6">
<li>Failing to inspect, identify, correct, remedy, repair, and/or warn of defects present in the subject Defective Step;</li>
<li>Permitting the Subject Motorhome to be sold while a defective condition—including within the subject Defective Step—was present;</li>
<li>Permitting the Subject Motorhome to be sold without defective condition(s) rectified, repaired, and/or adequately warned of; and/or</li>
<li>Failing to recall the Subject Motorhome and/or Motorhomes fitted with step systems identical or substantially similar to the subject Defective Step or, alternatively, to adequately warn of the same.</li>
</ol>

b. Marketing, promoting, advertising, and representing to the general public that the Subject Motorhome and/or subject Defective Step was reasonably safe for use, extension, and retraction when—in reality—reasonably foreseeable use is reasonably likely to cause the subject Defective Step to fail, collapse, and/or partially collapse;

c. Marketing, promoting, advertising, and representing to the general public that the Subject Motorhome and/or subject Defective Step was reasonably safe for use, extension, and retraction when—in reality—it was not and while a reasonable alternative design was readily available and feasible—including but not limited to the Lippert-branded "Solid Step" which Lippert and/or LCI readily admits is a "BETTER ENTRY STEP" with more clearance, stability, and protection from the elements but which Winnebago did not make standard and/or was an additional expense in exchange for, *inter alia*, fundamental safety which should come standard;

d. Failing to require design, manufacture, assembly, parts selection, and/or materials selection involving step platforms such that the subject Defective Step was sold without failure prevention systems, especially in the event of inadequate or non-existent maintenance;

e. Improperly assembling, inspecting, and testing the subject Defective Step, including prototypes in the design stage, such that foreseeable use could permit failure, collapse, and/or partial collapse of the subject Defective Step without remedying or warning of the risk of defect;

f.   Failing to perform and/or require proper design, manufacture, assembly, testing, inspection, labelling, and/or packaging of the subject Defective Step such that the subject Defective Step was not placed on the market for sale in a defect-free condition, thereby creating an unreasonable danger of injury or death to users, even under normal and foreseeable use;

g.   Failing to warn, notice, or alert purchasers and users (or doing so inadequately) either before, during, and/or after the sale of the subject Defective Step through reasonably informative and effective instructional materials, stickers, placards, and/or other documentation regarding hazardous conditions, including those described herein;

h.   Failing to instruct (or inadequately instructing) buyers, installers, inspectors, maintenance providers, contractors, and eventual owners and/or end users of the subject Defective Step with regard to proper use, maintenance, extension, retraction, and/or inspection of the subject Defective Step;

i.   Failing to inspect, test, review, or examine the subject Defective Step, including all component parts, to ensure the subject Defective Step would operate in a reasonably safe manner when the subject Defective Step left Winnebago's possession; and/or

j.   Failing to use due care in the selection of parts, marketing, distribution, sale, testing, or servicing of the subject Defective Step, in such a way as to render the subject Defective Step not reasonably safe.

62.   **CAUSATION.**   The negligence of Winnebago—described above—did directly and proximately cause the injuries and death of Mr. Burke, and thus the damages of Plaintiff, in that Winnebago's negligence did directly and in natural and continuous sequence, produce or contribute substantially to the physical injuries, death, and associated damages of Plaintiff.

63.   **DAMAGES.**   As a direct and proximate result of Winnebago's negligence, Nancy A. Burke, as Personal Representative of the Estate of David K. Burke, has incurred damages, including but not limited to pre-death physical and mental pain and suffering and premature burial expenses.

64.     Further, as a direct and proximate result of Winnebago's negligence, Nancy A. Burke (individually) has incurred damages for past, present, and future loss of spousal consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her husband, David K. Burke.

65.     Further, as a direct and proximate result of Winnebago's negligence, Russell D. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

66.     Further, as a direct and proximate result of Winnebago's negligence, Jeffrey J. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

67.     Further, as a direct and proximate result of Winnebago's negligence, Katherine E. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

68.     Further, as a direct and proximate result of Winnebago's negligence, Victoria J. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Winnebago Industries, Inc., including for an award of damages in an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—and for all other damages to which Plaintiffs are legally

entitled, along with all fees, costs, and interest as allowable by law, and for all other such other relief as this Honorable Court deems just and proper. Respectfully, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

## COUNT II
## STRICT LIABILITY OF WINNEBAGO INDUSTRIES, INC.

69. Plaintiff realleges paragraphs 1 through 51, as if fully set forth herein.

70. **THE BUSINESS.** Defendant, Winnebago, is engaged in the business of designing, manufacturing, marketing, advertising, selling, and/or distributing vehicles and motorcoaches—including the Subject Motorhome—with the concurrent business of instructing and warning about the same.

71. **THE PRODUCT.** Winnebago placed the Subject Motorhome in the stream of commerce—either directly or through the use of distributors—all while Winnebago knew or should have known the manner in which the Subject Motorhome was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

72. Specifically, Winnebago knew or should have known that end users would not and/or could not properly inspect the Subject Motorhome for defects and dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

73. Winnebago sold the Subject Winnebago and subject Defective Step to the Burkes while the Subject Winnebago and subject Defective Step were in a defective condition.

74. As of August 9, 2019, the subject Defective Step remained substantially unchanged from the "completed product" condition of the subject Defective Step at the time Winnebago

relinquished possession, custody, and/or control of the Subject Motorhome and subject Defective Step.

75. **ALTERNATIVE DESIGN(S).** Prior to the Subject Fall, Winnebago knew or should have known of one or more available and feasible alternative step design(s)—design(s) which could have and should have been adopted at or before the time of sale and/or distribution but which Winnebago did not so adopt.

76. Specifically, Lippert and/or LCI offered for sale at least one feasible alternative step design prior to the Subject Fall that, at least according to Lippert and/or LCI, was capable of reducing and/or avoiding the foreseeable risk of harm posed by the subject Defective Step. Winnebago failed incorporate Lippert and/or LCI's available and feasible alternative step design.

77. Winnebago's failure to adopt one or more alternative step design(s), including the feasible alternative step design described above, rendered the subject Defective Step and Subject Motorhome not reasonably safe.

78. The subject Defective Step and Subject Motorhome were not reasonably safe, in part or in whole, because available and feasible alternative step design(s) would have reduced or prevented the harms, losses, and damages suffered by Plaintiff through the death of Mr. Burke.

79. **THE DEFECTS.** Winnebago sold and/or distributed the Subject Motorhome in a condition that was defective and unreasonably dangerous to end users—including Mr. and Mrs. Burke—at the time the Subject Motorhome left the possession, custody, and/or control of Winnebago, including in one or more of the following ways:

    a. **Design Defect.** Winnebago sold and/or distributed the Subject Motorhome and component parts—including the subject Defective Step—while the same were in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail, by:
        i. Selling and/or distributing the product,

    ii.    While Winnebago was involved in the business of selling or distributing the product,

    iii.    While the Subject Motorhome and/or subject Defective Step were capable of collapse and/or partial collapse without sufficient warning, due to a design which created or made possible unnecessary and dangerous wear on rivets and/or bolts holding the subject Defective Step together, resulting in premature wear and failure, without utility,

    iv.    While a reasonable alternative design was available and feasible at the time the subject Defective Step left Winnebago's possession,

    v.    Where the reasonable alternative design would have reduced or avoided foreseeable risks of harm posed by the subject Defective Step,

    vi.    In that, the omission of the reasonable alternative design rendered the Subject Motorhome and/or subject Defective Step not reasonably safe,

    vii.    Where the reasonable alternative design would have reduced or prevented Plaintiff's harm,

    viii.    Where design defect(s) present in the Subject Motorhome and/or subject Defective Step was a proximate cause of Plaintiff's damage, and

    ix.    Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

b.    **Manufacturing Defect.**  Winnebago sold and/or distributed the Subject Motorhome and component parts—including the subject Defective Step—while the same were in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail, by:

    i.    Selling and/or distributing the product,

    ii.    While Winnebago was involved in the business of selling or distributing the product,

    iii.    While the Subject Motorhome and/or subject Defective Step were capable of collapse and/or partial collapse without sufficient warning, due to a manufacturing process which created or made possible unnecessary and dangerous wear on rivets and/or bolts holding the subject Defective Step together outside the product's intended design at the time if left possession of Winnebago, resulting in premature wear and failure, without utility,

    iv.    Where manufacturing defect(s) present in the Subject Motorhome and/or subject Defective Step was a proximate cause of Plaintiff's damage, and

      v.    Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

c. **Inadequate Instructions and Warnings.** Winnebago sold and/or distributed the Subject Motorhome and component parts—including the subject Defective Step—while the same were in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail without the benefit of adequate instruction and/or warning, by:

      i.    Selling and/or distributing the product,

      ii.   While Winnebago was involved in the business of selling or distributing the product,

      iii.   Where adequate instructions and/or warnings would have reduced or avoided foreseeable risk of harm by notifying and/or alerting users of the need to perform repair or replacement of the subject Defective Step in order to avoid or reduce the risk of collapse and/or partial collapse without sufficient warning,

      iv.   The absence of which, rendered the product not reasonably safe,

      v.    Owing to the fact that adequate instructions and/or warnings would have reasonably alerted foreseeable users to the invisible and/or unapparent dangers and risks posed by the product,

      vi.   In that, the absence of adequate instructions and/or warnings was a proximate cause of Plaintiff's damage, and

      vii.  Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

d. **Post-Sale Inadequate Instructions and Warnings.** Winnebago sold and/or distributed the Subject Motorhome and component parts—including the subject Defective Step—while the same were in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail without the benefit of adequate instruction and/or warning after the time of sale, by:

      i.    Selling and/or distributing the product,

      ii.   While Winnebago was involved in the business of selling or distributing the product,

      iii.   Where adequate instructions and/or warnings would have reduced or avoided foreseeable risk of harm by notifying and/or alerting users of the need to perform repair or replacement of the subject Defective Step in

order to avoid or reduce the risk of collapse and/or partial collapse without sufficient warning,

iv. The absence of which, rendered the product not reasonably safe,

v. Owing to the fact that adequate instructions and/or warnings would have reasonably alerted foreseeable users to the invisible and/or unapparent dangers and risks posed by the product,

vi. In that, the absence of adequate instructions and/or warnings was a proximate cause of Plaintiff's damage, and

vii. Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

e. **Marketing and Advertising.** Winnebago marketed, promoted, advertised, and/or otherwise represented that the Subject Motorhome and/or subject Defective Step was/were reasonably safe for use, extension, retraction, and/or general movement, when—in reality—reasonably foreseeable use alone was enough to permit the Subject Motorhome and/or subject Defective Step to fail, collapse, and/or partially collapse; at the same time, Winnebago marketed, promoted, advertised, and represented that the Subject Motorhome and/or subject Defective Step was/were reasonably safe for use, extension, retraction, and/or general movement, when—in reality—a reasonably alternative design was readily available and feasible via Lippert and/or LCI, but at a higher cost in the pursuit for profits.

80. For the reasons set forth herein, the Subject Motorhome and/or subject Defective Step was unreasonably dangerous to foreseeable users, including Mr. Burke and Plaintiff.

81. **CAUSATION.** The defects present in the subject Defective Step and/or Subject Motorhome, described herein, did directly and proximately cause the injuries and death suffered by Mr. Burke, and thus the damages of Plaintiff, in that the defects did directly and in natural and continuous sequence, produce or contribute substantially to Mr. Burke's injuries and death.

82. **DAMAGES.** As a direct and proximate result of the foregoing, Nancy A. Burke, as Personal Representative of the Estate of David K. Burke, has incurred damages—due and owing

by Winnebago—including for pre-death physical and mental pain and suffering and premature burial expenses.

83.     Further, as a direct and proximate result of the foregoing, Nancy A. Burke (individually) has incurred damages—due and owing by Winnebago—including for past, present, and future loss of spousal consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her husband, David K. Burke.

84.     Further, as a direct and proximate result of the foregoing, Russell D. Burke has incurred damages—due and owing by Winnebago—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

85.     Further, as a direct and proximate result of the foregoing, Jeffrey J. Burke has incurred damages—due and owing by Winnebago—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

86.     Further, as a direct and proximate result of the foregoing, Katherine E. Burke has incurred damages—due and owing by Winnebago—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

87.     Further, as a direct and proximate result of the foregoing, Victoria J. Burke has incurred damages—due and owing by Winnebago—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Winnebago Industries,

Inc., including for an award of damages in an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—and for all other damages to which Plaintiffs are legally entitled, along with all fees, costs, and interest as allowable by law, and for all other such other relief as this Honorable Court deems just and proper. Respectfully, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

### COUNT III
### NEGLIGENCE OF LIPPERT COMPONENTS, INC.

88.     Plaintiff realleges paragraphs 1 through 51, as if fully set forth herein.

89.     Prior to the Subject Fall, Lippert knew—or in the exercise of due care, should have known—that the Subject Winnebago would be used in the condition and manner in which it was used on the day and at the time of the Subject Fall.

90.     Specifically, prior to the Subject Fall, Lippert knew—or in the exercise of due care, should have known—that the subject Defective Step would be used in the condition and manner in which the subject Defective Step was used on the day and at the time of the Subject Fall.

91.     Accordingly, Lippert created a foreseeable zone of risk that ordinary users of the Subject Winnebago would be harmed by defects present within the subject Defective Step, including by one or more of the unreasonably dangerous conditions outlined herein.

92.     More egregiously, Lippert targeted retirees, senior citizens, and individuals with disabilities—all individuals at a higher risk of being injured and/or killed by a defective step system—thereby creating a heightened foreseeable zone of risk that the aforementioned individuals would be harmed by defects present within the subject Defective Step, including by one or more of the unreasonably dangerous conditions outlined herein.

93. Specifically, Lippert created a foreseeable zone of risk that users—including Mr. Burke—would be catastrophically injured or killed by any failure of the subject Defective Step, including in the creation or exacerbation of instability during extension, retraction, movement, and/or general use of the same.

94. Such a failure was foreseeable to Lippert, as the Subject Winnebago was designed, manufactured, advertised, marketed, distributed, and/or sold in such a way as to require the use of a step system—like the subject Defective Step—in order to enter and exit the Subject Motorhome.

95. On August 9, 2019, Lippert's product—the Subject Motorhome—failed, at the subject Defective Step, shearing a rivet and partially collapsing without warning.

96. **DUTY.** Defendant, Lippert, had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings and instructions for the subject Defective Step while also packaging, distributing, and selling the subject Defective Step in a reasonably safe condition so as not to present an unreasonable danger to end users—including Mr. Burke—who reasonably and expectedly, under ordinary circumstances, would use and come into contact with the subject Defective Step at the time of failure.

97. **BREACH.** Defendant, Lippert, breached its duty to Plaintiff in one or more of the following ways:

    a. Selling the subject Defective Step and/or component parts while the same were in such an unreasonably dangerous and defective manner as to permit the subject Defective Step to fail, including through:

        i. Failing to design, manufacture, distribute, and/or sell a step system capable of preventing, minimizing, and/or warning of collapse or partial collapse;

        ii. Failing to include redundancies capable of preventing, minimizing, and/or warning of collapse or partial collapse;

        iii. Failing to design, manufacture, distribute, and/or sell only reliable and safe internal components—including

within the subject Defective Step—so as to prevent unreasonable and/or unnecessary wear, stress, and/or movement of critical parts;

iv. Failing to design, manufacture, distribute, and/or sell only component parts of proper size, dimension, and weight;

v. Failing to design, manufacture, distribute, and/or sell only raw materials for component parts—including within the subject Defective Step—which are capable of enduring the ordinary forces associated with repeated extension, retraction, and use without collapse or partial collapse of step systems;

vi. Failing to inspect, identify, correct, remedy, repair, and/or warn of defects present in the subject Defective Step;

vii. Permitting the subject Defective Step to be designed, manufactured, distributed, and/or sold while a defective condition was present therein;

viii. Permitting the subject Defective Step to be sold without defective condition(s) rectified, repaired, and/or adequately warned of; and/or

ix. Failing to recall the subject Defective Step or, alternatively, to adequately warn of the same.

b. Marketing, promoting, advertising, and representing to the general public that the subject Defective Step was reasonably safe for use, extension, and retraction when—in reality—reasonably foreseeable use is reasonably likely to cause the subject Defective Step to fail, collapse, and/or partially collapse;

c. Marketing, promoting, advertising, and representing to the general public that the subject Defective Step was reasonably safe for use, extension, and retraction when—in reality—it was not and while a reasonable alternative design was readily available and feasible—including but not limited to the Lippert-branded "Solid Step" which Lippert and/or LCI readily admits is a "BETTER ENTRY STEP" with more clearance, stability, and protection from the elements but which Lippert did not make standard and/or was an additional expense in exchange for, *inter alia*, fundamental safety which should come standard;

d. Failing to design, manufacture, assemble, select parts and/or materials included with step platforms such that the subject Defective Step was sold without failure prevention systems, especially in the event of inadequate or non-existent maintenance;

e.   Improperly assembling, inspecting, and testing the subject Defective Step, including prototypes in the design stage, such that foreseeable use could permit failure, collapse, and/or partial collapse of the subject Defective Step without remedying or warning of the risk of defect;

k.   Failing to properly design, manufacture, assemble, test, inspect, label, and/or package the subject Defective Step such that the subject Defective Step was not placed on the market for sale in a defect-free condition, thereby creating an unreasonable danger of injury or death to users, even under normal and foreseeable use;

f.   Failing to warn, notice, or alert purchasers and users (or doing so inadequately) either before, during, and/or after the sale of the subject Defective Step through reasonably informative and effective instructional materials, stickers, placards, and/or other documentation regarding hazardous conditions, including those described herein;

g.   Failing to instruct (or inadequately instructing) buyers, installers, inspectors, maintenance providers, contractors, and eventual owners and/or end users of the subject Defective Step with regard to proper use, maintenance, extension, retraction, and/or inspection of the subject Defective Step;

h.   Failing to inspect, test, review, or examine the subject Defective Step, including all component parts, to ensure the subject Defective Step would operate in a reasonably safe manner when the subject Defective Step left Lippert's possession; and/or

i.   Failing to use due care in the selection of parts, marketing, distribution, sale, testing, or servicing of the subject Defective Step, in such a way as to render the subject Defective Step not reasonably safe.

98.   **CAUSATION.** The negligence of Lippert—described above—did directly and proximately cause the injuries and death of Mr. Burke, and thus the damages of Plaintiff, in that Lippert's negligence did directly and in natural and continuous sequence, produce or contribute substantially to the physical injuries, death, and associated damages of Plaintiff.

99. **DAMAGES.** As a direct and proximate result of Lippert's negligence, Nancy A. Burke, as Personal Representative of the Estate of David K. Burke, has incurred damages, including but not limited to pre-death physical and mental pain and suffering and premature burial expenses.

100. Further, as a direct and proximate result of Lippert's negligence, Nancy A. Burke (individually) has incurred damages for past, present, and future loss of spousal consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her husband, David K. Burke.

101. Further, as a direct and proximate result of Lippert's negligence, Russell D. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

102. Further, as a direct and proximate result of Lippert's negligence, Jeffrey J. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

103. Further, as a direct and proximate result of Lippert's negligence, Katherine E. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

104. Further, as a direct and proximate result of Lippert's negligence, Victoria J. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past,

present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

WHEREFORE, Plaintiffs demand judgment against Defendant, Lippert Components, Inc., including for an award of damages in an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—and for all other damages to which Plaintiffs are legally entitled, along with all fees, costs, and interest as allowable by law, and for all other such other relief as this Honorable Court deems just and proper. Respectfully, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

## COUNT IV
## STRICT LIABILITY OF LIPPERT COMPONENTS, INC.

105. Plaintiff realleges paragraphs 1 through 51, as if fully set forth herein.

106. **THE BUSINESS.** Defendant, Lippert, is engaged in the business of designing, manufacturing, marketing, advertising, selling, and/or distributing component parts and equipment for vehicles and motorcoaches—including the Subject Motorhome—with the concurrent business of instructing and warning about the same.

107. **THE PRODUCT.** Lippert placed the subject Defective Step in the stream of commerce—either directly or through the use of distributors—all while Lippert knew or should have known the manner in which the subject Defective Step was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

108. Specifically, Lippert knew or should have known that end users would not and/or could not properly inspect the subject Defective Step for defects and dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

109. Lippert sold the subject Defective Step to the Burkes, either directly or indirectly, while the Subject Winnebago and subject Defective Step were in a defective condition.

110. Alternately, Lippert sold the subject Defective Step to Winnebago knowing that Winnebago would sell the subject Defective Step, either directly or through distributors, to end users while in a defective condition.

111. As of August 9, 2019, the subject Defective Step remained substantially unchanged from the "completed product" condition of the subject Defective Step at the time Lippert relinquished possession, custody, and/or control of the subject Defective Step.

112. **ALTERNATIVE DESIGN(S).** Prior to the Subject Fall, Lippert knew or should have known of one or more available and feasible alternative step design(s)—design(s) which could have and should have been adopted at or before the time of sale and/or distribution of the Subject Motorhome.

113. Specifically, Lippert and/or LCI offered for sale at least one feasible alternative step design prior to the Subject Fall that, at least according to Lippert and/or LCI, was capable of reducing and/or avoiding the foreseeable risk of harm posed by the subject Defective Step. Lippert failed incorporate the available and feasible alternative step design in the Subject Motorhome.

114. Lippert's failure to adopt one or more alternative step design(s), including the feasible alternative step design described above, rendered the subject Defective Step and Subject Motorhome not reasonably safe.

115. The subject Defective Step and Subject Motorhome were not reasonably safe, in part or in whole, because available and feasible alternative step design(s) would have reduced or prevented the harms, losses, and damages suffered by Plaintiff through the death of Mr. Burke.

116.    **THE DEFECTS.** Lippert sold and/or distributed the subject Defective Step in a condition that was defective and unreasonably dangerous to end users—including Mr. and Mrs. Burke—at the time the subject Defective Step left the possession, custody, and/or control of Lippert, including in one or more of the following ways:

    a.  **Design Defect.** Lippert sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail, by:

        i.  Selling and/or distributing the product,

        ii.  While Lippert was involved in the business of selling or distributing the product,

        iii.  While the subject Defective Step was capable of collapse and/or partial collapse without sufficient warning, due to a design which created or made possible unnecessary and dangerous wear on rivets and/or bolts holding the subject Defective Step together, resulting in premature wear and failure, without utility,

        iv.  While a reasonable alternative design was available and feasible at the time the subject Defective Step left Lippert's possession,

        v.  Where the reasonable alternative design would have reduced or avoided foreseeable risks of harm posed by the subject Defective Step,

        vi.  In that, the omission of the reasonable alternative design rendered the Subject Motorhome and/or subject Defective Step not reasonably safe,

        vii.  Where the reasonable alternative design would have reduced or prevented Plaintiff's harm,

        viii.  Where design defect(s) present in the Subject Motorhome and/or subject Defective Step was a proximate cause of Plaintiff's damage, and

        ix.  Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

    b.  **Manufacturing Defect.** Lippert sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail, by:

        i.  Selling and/or distributing the product,

        ii.  While Lippert was involved in the business of selling or distributing the product,

      iii.    While the subject Defective Step was capable of collapse and/or partial collapse without sufficient warning, due to a manufacturing process which created or made possible unnecessary and dangerous wear on rivets and/or bolts holding the subject Defective Step together outside the product's intended design at the time if left possession of Lippert, resulting in premature wear and failure, without utility,

      iv.    Where manufacturing defect(s) present in the Subject Motorhome and/or subject Defective Step was a proximate cause of Plaintiff's damage, and

      v.    Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

c.    **Inadequate Instructions and Warnings.** Lippert sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the subject Defective Step to fail without the benefit of adequate instruction and/or warning, by:

      i.    Selling and/or distributing the product,

      ii.    While Lippert was involved in the business of selling or distributing the product,

      iii.    Where adequate instructions and/or warnings would have reduced or avoided foreseeable risk of harm by notifying and/or alerting users of the need to perform repair or replacement of the subject Defective Step in order to avoid or reduce the risk of collapse and/or partial collapse without sufficient warning,

      iv.    The absence of which, rendered the product not reasonably safe,

      v.    Owing to the fact that adequate instructions and/or warnings would have reasonably alerted foreseeable users to the invisible and/or unapparent dangers and risks posed by the product,

      vi.    In that, the absence of adequate instructions and/or warnings was a proximate cause of Plaintiff's damage, and

      vii.    Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

d.    **Post-Sale Inadequate Instructions and Warnings.** Lippert sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the subject Defective Step to fail without the benefit of adequate instruction and/or warning after the time of sale, by:

i. Selling and/or distributing the product,

ii. While Lippert was involved in the business of selling or distributing the product,

iii. Where adequate instructions and/or warnings would have reduced or avoided foreseeable risk of harm by notifying and/or alerting users of the need to perform repair or replacement of the subject Defective Step in order to avoid or reduce the risk of collapse and/or partial collapse without sufficient warning,

iv. The absence of which, rendered the product not reasonably safe,

v. Owing to the fact that adequate instructions and/or warnings would have reasonably alerted foreseeable users to the invisible and/or unapparent dangers and risks posed by the product,

vi. In that, the absence of adequate instructions and/or warnings was a proximate cause of Plaintiff's damage, and

vii. Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

e. **Marketing and Advertising.** Lippert marketed, promoted, advertised, and/or otherwise represented that the subject Defective Step was reasonably safe for use, extension, retraction, and/or general movement, when—in reality— reasonably foreseeable use alone was enough to permit the subject Defective Step to fail, collapse, and/or partially collapse; at the same time, Lippert marketed, promoted, advertised, and represented that the subject Defective Step was reasonably safe for use, extension, retraction, and/or general movement, when— in reality—a reasonably alternative design was readily available and feasible via Lippert and/or LCI, but at a higher cost in the pursuit for profits.

117. For the reasons set forth herein, the subject Defective Step was unreasonably dangerous to foreseeable users, including Mr. Burke and Plaintiff.

118. **CAUSATION.** The defects present in the subject Defective Step and/or Subject Motorhome, described herein, did directly and proximately cause the injuries and death suffered by Mr. Burke, and thus the damages of Plaintiff, in that the defects did directly and in natural and continuous sequence, produce or contribute substantially to Mr. Burke's injuries and death.

119.  **DAMAGES.**  As a direct and proximate result of the foregoing, Nancy A. Burke, as Personal Representative of the Estate of David K. Burke, has incurred damages—due and owing by Lippert—including for pre-death physical and mental pain and suffering and premature burial expenses.

120.  Further, as a direct and proximate result of the foregoing, Nancy A. Burke (individually) has incurred damages—due and owing by Lippert—including for past, present, and future loss of spousal consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her husband, David K. Burke.

121.  Further, as a direct and proximate result of the foregoing, Russell D. Burke has incurred damages—due and owing by Lippert—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

122.  Further, as a direct and proximate result of the foregoing, Jeffrey J. Burke has incurred damages—due and owing by Lippert—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

123.  Further, as a direct and proximate result of the foregoing, Katherine E. Burke has incurred damages—due and owing by Lippert—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

124.  Further, as a direct and proximate result of the foregoing, Victoria J. Burke has incurred damages—due and owing by Lippert—including for past, present, and future loss of

parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, Lippert Components, Inc., including for an award of damages in an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—and for all other damages to which Plaintiffs are legally entitled, along with all fees, costs, and interest as allowable by law, and for all other such other relief as this Honorable Court deems just and proper.  Respectfully, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

## COUNT V
## NEGLIGENCE OF LCI INDUSTRIES, INC.

125.    Plaintiffs reallege paragraphs 1 through 51 as if fully set forth herein.

126.    Prior to the Subject Fall, LCI knew—or in the exercise of due care, should have known—that the Subject Winnebago would be used in the condition and manner in which it was used on the day and at the time of the Subject Fall.

127.    Specifically, prior to the Subject Fall, LCI knew—or in the exercise of due care, should have known—that the subject Defective Step would be used in the condition and manner in which the subject Defective Step was used on the day and at the time of the Subject Fall.

128.    Accordingly, LCI created a foreseeable zone of risk that ordinary users of the Subject Winnebago would be harmed by defects present within the subject Defective Step, including by one or more of the unreasonably dangerous conditions outlined herein.

129.    More egregiously, LCI targeted retirees, senior citizens, and individuals with disabilities—all individuals at a higher risk of being injured and/or killed by a defective step system—thereby creating a heightened foreseeable zone of risk that the aforementioned

individuals would be harmed by defects present within the subject Defective Step, including by one or more of the unreasonably dangerous conditions outlined herein.

130. Specifically, LCI created a foreseeable zone of risk that users—including Mr. Burke—would be catastrophically injured or killed by any failure of the subject Defective Step, including in the creation or exacerbation of instability during extension, retraction, movement, and/or general use of the same.

131. Such a failure was foreseeable to LCI, as the Subject Winnebago was designed, manufactured, advertised, marketed, distributed, and/or sold in such a way as to require the use of a step system—like the subject Defective Step—in order to enter and exit the Subject Motorhome.

132. On August 9, 2019, LCI'S product—the Subject Motorhome—failed, at the subject Defective Step, shearing a rivet and partially collapsing without warning.

133. **DUTY.** Defendant, LCI, had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings and instructions for the subject Defective Step while also packaging, distributing, and selling the subject Defective Step in a reasonably safe condition so as not to present an unreasonable danger to end users—including Mr. Burke—who reasonably and expectedly, under ordinary circumstances, would use and come into contact with the subject Defective Step at the time of failure.

134. **BREACH.** Defendant, LCI, breached its duty to Plaintiff in one or more of the following ways:

    a. Selling the subject Defective Step and/or component parts while the same were in such an unreasonably dangerous and defective manner as to permit the subject Defective Step to fail, including through:

        i. Failing to design, manufacture, distribute, and/or sell a step system capable of preventing, minimizing, and/or warning of collapse or partial collapse;

ii.    Failing to include redundancies capable of preventing, minimizing, and/or warning of collapse or partial collapse;

iii.   Failing to design, manufacture, distribute, and/or sell only reliable and safe internal components—including within the subject Defective Step—so as to prevent unreasonable and/or unnecessary wear, stress, and/or movement of critical parts;

iv.    Failing to design, manufacture, distribute, and/or sell only component parts of proper size, dimension, and weight;

v.     Failing to design, manufacture, distribute, and/or sell only raw materials for component parts—including within the subject Defective Step—which are capable of enduring the ordinary forces associated with repeated extension, retraction, and use without collapse or partial collapse of step systems;

vi.    Failing to inspect, identify, correct, remedy, repair, and/or warn of defects present in the subject Defective Step;

vii.   Permitting the subject Defective Step to be designed, manufactured, distributed, and/or sold while a defective condition was present therein;

viii.  Permitting the subject Defective Step to be sold without defective condition(s) rectified, repaired, and/or adequately warned of; and/or

ix.    Failing to recall the subject Defective Step or, alternatively, to adequately warn of the same.

b.  Marketing, promoting, advertising, and representing to the general public that the subject Defective Step was reasonably safe for use, extension, and retraction when—in reality—reasonably foreseeable use is reasonably likely to cause the subject Defective Step to fail, collapse, and/or partially collapse;

c.  Marketing, promoting, advertising, and representing to the general public that the subject Defective Step was reasonably safe for use, extension, and retraction when—in reality—it was not and while a reasonable alternative design was readily available and feasible—including but not limited to the Lippert-branded "Solid Step" which Lippert and/or LCI readily admits is a "BETTER ENTRY STEP" with more clearance, stability, and protection from the elements but which LCI did not make standard and/or was an additional expense in exchange for, *inter alia*, fundamental safety which should come standard;

d. Failing to design, manufacture, assemble, select parts and/or materials included with step platforms such that the subject Defective Step was sold without failure prevention systems, especially in the event of inadequate or non-existent maintenance;

e. Improperly assembling, inspecting, and testing the subject Defective Step, including prototypes in the design stage, such that foreseeable use could permit failure, collapse, and/or partial collapse of the subject Defective Step without remedying or warning of the risk of defect;

l. Failing to properly design, manufacture, assemble, test, inspect, label, and/or package the subject Defective Step such that the subject Defective Step was not placed on the market for sale in a defect-free condition, thereby creating an unreasonable danger of injury or death to users, even under normal and foreseeable use;

f. Failing to warn, notice, or alert purchasers and users (or doing so inadequately) either before, during, and/or after the sale of the subject Defective Step through reasonably informative and effective instructional materials, stickers, placards, and/or other documentation regarding hazardous conditions, including those described herein;

g. Failing to instruct (or inadequately instructing) buyers, installers, inspectors, maintenance providers, contractors, and eventual owners and/or end users of the subject Defective Step with regard to proper use, maintenance, extension, retraction, and/or inspection of the subject Defective Step;

h. Failing to inspect, test, review, or examine the subject Defective Step, including all component parts, to ensure the subject Defective Step would operate in a reasonably safe manner when the subject Defective Step left Lippert's possession; and/or

i. Failing to use due care in the selection of parts, marketing, distribution, sale, testing, or servicing of the subject Defective Step, in such a way as to render the subject Defective Step not reasonably safe.

135. **CAUSATION.** The negligence of LCI—described above—did directly and proximately cause the injuries and death of Mr. Burke, and thus the damages of Plaintiff, in that

LCI's negligence did directly and in natural and continuous sequence, produce or contribute substantially to the physical injuries, death, and associated damages of Plaintiff.

136. **DAMAGES.** As a direct and proximate result of LCI's negligence, Nancy A. Burke, as Personal Representative of the Estate of David K. Burke, has incurred damages, including but not limited to pre-death physical and mental pain and suffering and premature burial expenses.

137. Further, as a direct and proximate result of LCI's negligence, Nancy A. Burke (individually) has incurred damages for past, present, and future loss of spousal consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her husband, David K. Burke.

138. Further, as a direct and proximate result of LCI's negligence, Russell D. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

139. Further, as a direct and proximate result of LCI's negligence, Jeffrey J. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

140. Further, as a direct and proximate result of LCI's negligence, Katherine E. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

141. Further, as a direct and proximate result of LCI's negligence, Victoria J. Burke has incurred damages for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

WHEREFORE, Plaintiffs demand judgment against Defendant, LCI Industries, including for an award of damages in an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—and for all other damages to which Plaintiffs are legally entitled, along with all fees, costs, and interest as allowable by law, and for all other such other relief as this Honorable Court deems just and proper. Respectfully, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

## COUNT VI
## STRICT LIABILITY OF LCI INDUSTRIES, INC.

142. Plaintiff realleges paragraphs 1 through 51, as if fully set forth herein.

143. **THE BUSINESS.** Defendant, LCI, is engaged in the business of designing, manufacturing, marketing, advertising, selling, and/or distributing component parts and equipment for vehicles and motorcoaches—including the Subject Motorhome—with the concurrent business of instructing and warning about the same.

144. **THE PRODUCT.** LCI placed the subject Defective Step in the stream of commerce—either directly or through the use of distributors—all while LCI knew or should have known the manner in which the subject Defective Step was reasonably likely to be used, including in situations where inspection for defects and dangers by the end user could not, did not, or do not occur.

145. Specifically, LCI knew or should have known that end users would not and/or could not properly inspect the subject Defective Step for defects and dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

146. LCI sold the subject Defective Step to the Burkes, either directly or indirectly, while the Subject Winnebago and subject Defective Step were in a defective condition.

147.     Alternately, LCI sold the subject Defective Step to Winnebago knowing that Winnebago would sell the subject Defective Step, either directly or through distributors, to end users while in a defective condition.

148.     As of August 9, 2019, the subject Defective Step remained substantially unchanged from the "completed product" condition of the subject Defective Step at the time LCI relinquished possession, custody, and/or control of the subject Defective Step.

149.     **ALTERNATIVE DESIGN(S).**  Prior to the Subject Fall, LCI knew or should have known of one or more available and feasible alternative step design(s)—design(s) which could have and should have been adopted at or before the time of sale and/or distribution of the Subject Motorhome.

150.     Specifically, Lippert and/or LCI offered for sale at least one feasible alternative step design prior to the Subject Fall that, at least according to Lippert and/or LCI, was capable of reducing and/or avoiding the foreseeable risk of harm posed by the subject Defective Step.  Lippert failed incorporate the available and feasible alternative step design in the Subject Motorhome.

151.     LCI's failure to adopt one or more alternative step design(s), including the feasible alternative step design described above, rendered the subject Defective Step and Subject Motorhome not reasonably safe.

152.     The subject Defective Step and Subject Motorhome were not reasonably safe, in part or in whole, because available and feasible alternative step design(s) would have reduced or prevented the harms, losses, and damages suffered by Plaintiff through the death of Mr. Burke.

153.     **THE DEFECTS.**  LCI sold and/or distributed the subject Defective Step in a condition that was defective and unreasonably dangerous to end users—including Mr. and Mrs.

Burke—at the time the subject Defective Step left the possession, custody, and/or control of LCI, including in one or more of the following ways:

    a. **Design Defect.** LCI sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail, by:

        i. Selling and/or distributing the product,

        ii. While LCI was involved in the business of selling or distributing the product,

        iii. While the subject Defective Step was capable of collapse and/or partial collapse without sufficient warning, due to a design which created or made possible unnecessary and dangerous wear on rivets and/or bolts holding the subject Defective Step together, resulting in premature wear and failure, without utility,

        iv. While a reasonable alternative design was available and feasible at the time the subject Defective Step left LCI's possession,

        v. Where the reasonable alternative design would have reduced or avoided foreseeable risks of harm posed by the subject Defective Step,

        vi. In that, the omission of the reasonable alternative design rendered the Subject Motorhome and/or subject Defective Step not reasonably safe,

        vii. Where the reasonable alternative design would have reduced or prevented Plaintiff's harm,

        viii. Where design defect(s) present in the Subject Motorhome and/or subject Defective Step was a proximate cause of Plaintiff's damage, and

        ix. Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

    b. **Manufacturing Defect.** LCI sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the Subject Motorhome and/or subject Defective Step to fail, by:

        i. Selling and/or distributing the product,

        ii. While LCI was involved in the business of selling or distributing the product,

        iii. While the subject Defective Step was capable of collapse and/or partial collapse without sufficient warning, due to a manufacturing process which created or made possible unnecessary and dangerous wear on rivets and/or bolts holding the subject Defective Step together outside the

product's intended design at the time if left possession of LCI, resulting in premature wear and failure, without utility,

    iv.    Where manufacturing defect(s) present in the Subject Motorhome and/or subject Defective Step was a proximate cause of Plaintiff's damage, and

    v.    Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

c.    **Inadequate Instructions and Warnings.** LCI sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the subject Defective Step to fail without the benefit of adequate instruction and/or warning, by:

    i.    Selling and/or distributing the product,

    ii.    While LCI was involved in the business of selling or distributing the product,

    iii.    Where adequate instructions and/or warnings would have reduced or avoided foreseeable risk of harm by notifying and/or alerting users of the need to perform repair or replacement of the subject Defective Step in order to avoid or reduce the risk of collapse and/or partial collapse without sufficient warning,

    iv.    The absence of which, rendered the product not reasonably safe,

    v.    Owing to the fact that adequate instructions and/or warnings would have reasonably alerted foreseeable users to the invisible and/or unapparent dangers and risks posed by the product,

    vi.    In that, the absence of adequate instructions and/or warnings was a proximate cause of Plaintiff's damage, and

    vii.    Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

d.    **Post-Sale Inadequate Instructions and Warnings.** LCI sold and/or distributed the subject Defective Step while the subject Defective Step was in such an unreasonably dangerous and defective condition as to permit the subject Defective Step to fail without the benefit of adequate instruction and/or warning after the time of sale, by:

    i.    Selling and/or distributing the product,

    ii.    While LCI was involved in the business of selling or distributing the product,

    iii.    Where adequate instructions and/or warnings would have reduced or avoided foreseeable risk of harm by

notifying and/or alerting users of the need to perform repair or replacement of the subject Defective Step in order to avoid or reduce the risk of collapse and/or partial collapse without sufficient warning,

iv. The absence of which, rendered the product not reasonably safe,

v. Owing to the fact that adequate instructions and/or warnings would have reasonably alerted foreseeable users to the invisible and/or unapparent dangers and risks posed by the product,

vi. In that, the absence of adequate instructions and/or warnings was a proximate cause of Plaintiff's damage, and

vii. Where Plaintiff suffered damages exceeding the jurisdictional limit of this Court.

e. **Marketing and Advertising.** LCI marketed, promoted, advertised, and/or otherwise represented that the subject Defective Step was reasonably safe for use, extension, retraction, and/or general movement, when—in reality—reasonably foreseeable use alone was enough to permit the subject Defective Step to fail, collapse, and/or partially collapse; at the same time, LCI marketed, promoted, advertised, and represented that the subject Defective Step was reasonably safe for use, extension, retraction, and/or general movement, when—in reality—a reasonably alternative design was readily available and feasible via Lippert and/or LCI, but at a higher cost in the pursuit for profits.

154. For the reasons set forth herein, the subject Defective Step was unreasonably dangerous to foreseeable users, including Mr. Burke and Plaintiff.

155. **CAUSATION.** The defects present in the subject Defective Step and/or Subject Motorhome, described herein, did directly and proximately cause the injuries and death suffered by Mr. Burke, and thus the damages of Plaintiff, in that the defects did directly and in natural and continuous sequence, produce or contribute substantially to Mr. Burke's injuries and death.

156. **DAMAGES.** As a direct and proximate result of the foregoing, Nancy A. Burke, as Personal Representative of the Estate of David K. Burke, has incurred damages—due and owing

by LCI—including for pre-death physical and mental pain and suffering and premature burial expenses.

157.    Further, as a direct and proximate result of the foregoing, Nancy A. Burke (individually) has incurred damages—due and owing by LCI—including for past, present, and future loss of spousal consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her husband, David K. Burke.

158.    Further, as a direct and proximate result of the foregoing, Russell D. Burke has incurred damages—due and owing by LCI—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

159.    Further, as a direct and proximate result of the foregoing, Jeffrey J. Burke has incurred damages—due and owing by LCI—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of his father, David K. Burke.

160.    Further, as a direct and proximate result of the foregoing, Katherine E. Burke has incurred damages—due and owing by LCI—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

161.    Further, as a direct and proximate result of the foregoing, Victoria J. Burke has incurred damages—due and owing by LCI—including for past, present, and future loss of parental consortium and has lost past, present, and future loss of consortium, aid, affection, support and services of her father, David K. Burke.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, LCI Industries, including

for an award of damages in an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—and for all other damages to which Plaintiffs are legally entitled, along with all fees, costs, and interest as allowable by law, and for all other such other relief as this Honorable Court deems just and proper. Respectfully, Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that this Court enter judgment in their favor and against the Defendants for an amount that exceeds the jurisdictional limit of this Court—seventy-five thousand dollars—to be determined at trial, including for all damages to which Plaintiffs are legally entitled, along with all fees, costs, and interest as allowable by law.

**JURY TRIAL REQUEST**

Plaintiffs respectfully request a jury hear all issues which are so triable in this matter.

**Respectfully Submitted**, this <u>30th</u> day of <u>June</u>, <u>2021</u>.


REYNOLDS AND KENLINE, L.L.P.

*/s/ Todd Klapatauskas*
**TODD KLAPATAUSKAS, ESQ.**
Reynolds and Kenline, LLP
Iowa State Bar No. 15900
110 East 9th Street
Dubuque, IA 52001
Tel. 563-556-8000
Fax: 563-556-8009
klapatauskas@rkenline.com

*And, upon entry of order granting pro hac vice*


/s/ *Nicholas S. Gurney*
**NICHOLAS S. GURNEY, ESQ.**

Case 3:21-cv-03020-CJW-KEM   Document 1   Filed 06/30/21   Page 42 of 43

Florida Bar No. 125013
**GURNEY LAW, PLLC**
1238 E. Concord St.
Orlando, Florida 32803
Main: (407) 554-5757
Fax: (407) 543-6543
*Service Email: service@gurney.law*
*Service Email: nick@gurney.law*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on June 30th, 2021, undersigned electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

REYNOLDS AND KENLINE, L.L.P.

*/s/ Todd Klapatauskas*
**TODD KLAPATAUSKAS, ESQ.**
Reynolds and Kenline, LLP
Iowa State Bar No. 15900
110 East 9th Street
Dubuque, IA 52001
Tel. 563-556-8000
Fax: 563-556-8009
klapatauskas@rkenline.com