IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NANCY ANN BURKE, et al., | |
| Plaintiffs, | Case No. 21-CV-3020-CJW-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| LIPPERT COMPONENTS INC., et al., | |
| Defendants. | |

Currently pending before the court is Defendants'[1] joint motion for a protective order prohibiting Plaintiffs from performing destructive testing on the RV[2] step at issue in this products-liability lawsuit. I agree with Defendants that such testing is untimely and **grant** the motion (Doc. 91).

## I.  BACKGROUND

The accident in this case (resulting in Plaintiffs' decedent's death) occurred in August 2019. Doc. 1. Plaintiffs allege that a defective step on their motor home failed, causing their decedent to fall to his death. *Id.* They bring claims of negligence and products liability (design and manufacturing defect). *Id.*

The complaint in this case was filed in June 2021. *Id.* Before that, experts for both sides conducted a joint inspection of the RV step in February 2021. Doc. 91-1. The

---

[1] For purposes of this order, "Defendants" refers to Defendant Lippert Components Inc.; Defendant LCI Industries; Third-Party Defendant Enerpac Tool Group Corp.; and Third-Party Defendant Engineered Solutions, L.P. Defendant Winnebago Industries, Inc., was also a party to the motion at the time of filing, but Winnebago has since been dismissed from this case. Doc. 106.

[2] Recreational Vehicle.

inspection was non-destructive, and the rivets were not removed from the step. *Id.* The experts agreed, however, that a rivet securing the step to a mounting bar had fractured and failed. Doc. 100-1.

In January 2022, Plaintiffs propounded discovery requests on Defendants. Doc. 100-5 at 2. As part of those requests, Plaintiffs asked for a set of exemplar steps and exemplar replacement parts for the step (both consumer-level replacement parts and service-center-level replacement parts). *Id.* at 12-13. Plaintiffs noted they would pay for production and shipping of the exemplar steps and parts. *Id.* Winnebago responded in early March, stating that the steps at issue "were manufactured and installed nearly ten years ago" and that "[a]s a result, Winnebago has no exemplar steps identical or substantially similar to that entry step assembly and therefore cannot produce or sell one in response to this request." *Id.* Winnebago also listed the Lippert website where it believed replacement parts could be identified and purchased. *Id.* According to Plaintiffs, during an April 13, 2022 meet-and-confer phone call, Plaintiffs argued that Winnebago "was obligated to produce replacement parts . . . as described herein," and Winnebago resisted and stated that it would not seek to use any exemplars during this action, including at trial. Doc. 100-5 at 81-82; *see also id.* at 58-59.

Plaintiffs' expert report was due in early April 2022. Doc. 13. Plaintiffs' expert based his opinion on discovery and the February 2021 inspection of the step. Doc. 100-2. He also noted that "[t]o examine the structural properties of the connecting rivets," he searched for replacement parts and found three-eighth inch shoulder bolts. *Id.* He opined that the failed rivet caused the step to deflect and Plaintiffs' decedent to fall. *Id.* He noted that "the material composition of the rivets has not been determined" and that "[i]t is possible . . . the failure to the rivet was caused by insufficient material shear strength under expected loading, or a material that was not properly hardened." *Id.*

Lippert responded to Plaintiffs' discovery request for exemplar steps on April 11, 2022, with links to a website where steps and replacement parts could be ordered. Doc. 100-5 at 17-19. During a meet-and-confer phone call in April, Plaintiffs informed Lippert

2

the links did not work, and according to Plaintiffs, Lippert agreed to provide an updated link to purchase exemplar steps and parts by May 6, 2022. *Id.* at 48-50.

Defendants' expert reports were due in early May 2022. Doc. 13. Like Plaintiffs' expert, Lippert's expert had not examined the step beyond the February 2021 joint inspection. He opined that without destructive testing and a metallurgical analysis of the rivet, the root cause of the rivet failure (and whether a design or manufacturing defect) could not be determined. Doc. 100-3. He opined that any opinions about the cause of the rivet failure or that "the rivet failure caused . . . [the fall] from the subject steps [were] speculative." *Id.*

In addition to the February 2021 inspection, Winnebago's expert examined an exemplar step on May 2, 2022, with an investigator for Plaintiffs present (but not counsel). Docs. 100-4, 100-5 at 4 n.1, 101-1. He told Plaintiffs' representative that he had purchased the exemplar step online a few days earlier. Doc. 101-1. In his report, he opined that the rivet "failed due to shear stresses imposed to the rivet body," noting that the fracture in the rivet allowed the steps to "flex under load." Doc. 100-4. He noted that metallurgical analysis (which would be destructive) would be required to "learn more about the mechanism of the rivet failure" and determine if "a material defect was a contributing factor." *Id.* He opined that the installation of the RV steps did not cause the rivet failure. *Id.*

Winnebago served its expert report on May 2,[3] which indicates that the expert examined an exemplar step. *Id.* On May 10, Winnebago emailed Plaintiffs' counsel the pictures its expert had taken during the inspection. Doc. 101-2. These pictures included the sealed Kwikee box containing the exemplar step the expert had purchased (the box is labeled with the Kwikee logo but does not otherwise indicate its contents). *Id.*

---

[3] Plaintiffs' counsel states in an affidavit that Winnebago's expert report was not disclosed to Plaintiffs until June 15, 2022, but provides no other evidence to confirm this date. Doc. 100-5 at 4. Winnebago's counsel stated in a declaration that it served the report on the deadline, May 2, and includes as an attachment the May 2 email containing the report. Doc. 101-2. The report is also dated May 2. Doc. 100-4.

Plaintiffs' rebuttal expert reports were due in early June 2022. Doc. 13. On June 5, 2022, Plaintiffs sent a letter to Lippert, noting that it had not provided updated links to purchase exemplar steps and parts as previously promised. Doc. 100-5 at 46-50. A few days later, Lippert amended its responses with new website links. *Id.* at 52-54. On June 16, 2022, Plaintiffs emailed, stating that due to Lippert's refusal to cooperate, they would be filing a motion to compel and for sanctions. *Id.* at 75. Lippert responded requesting Plaintiffs be reasonable, noting that it had received Plaintiffs' email only five hours previously and that it was waiting to hear back from its client. *Id.* Plaintiffs responded that they were referring to the inadequate supplemental responses, noting they did not contain a link to purchase rivets or bolts (as well as suffering other issues). *Id.* at 74. On June 27, Plaintiffs again emailed Lippert, requesting that it show Plaintiffs where precisely on the provided website link the replacement parts could be ordered. *Id.* at 71-72. Plaintiffs noted that they needed exemplar rivets and that "[t]his is the last time I will ask short of a motion for sanctions." *Id.*

Plaintiffs sent a letter to Winnebago on June 24, summarizing an April meet-and-confer phone call. *Id.* at 28-29. Plaintiffs noted Winnebago had indicated it did not intend to use exemplar steps or replacement parts, and Plaintiffs stated they accepted this agreement. *Id.* On June 29, Winnebago responded, noting that it had not known exemplar steps were available during the April phone call. *Id.* at 58-59. Winnebago noted, however, that as stated during the May 2 inspection, its expert was able to purchase an exemplar step from an aftermarket retailer and that he would likely use this step in forming his opinion. *Id.* Winnebago agreed to provide the exemplar step for inspection at a "mutually agreeable time and location." *Id.* The next day, on June 30, it supplemented its discovery responses accordingly. *Id.* at 66-67. Plaintiffs did not email Winnebago any further regarding the exemplar step or replacement parts.

Meanwhile, on June 21, 2022, Plaintiffs ordered an exemplar step from Lippert's website. Doc. 100-5 at 102. According to Plaintiffs, they had to make their best

4

estimation as to the correct step, as Defendants never provided any concrete direction.[4] *Id.* at 4. Between two possible replacement steps, their expert determined the one ordered appeared to be the correct one. *Id.* Plaintiffs' expert received the step on June 28, 2022. *Id.*

Despite receiving an exemplar step in late June, Plaintiffs took no steps to conduct testing on the step in July and August. By September 19, 2022, Plaintiffs had developed a plan to test the metallurgical content of the rivets in the exemplar step, and it was sent to a testing facility on October 3. Doc. 100-5 at 5. The discovery deadline in this case expired on October 7, 2022. Doc. 58. On October 11, after the close of discovery, Plaintiffs' expert received the report from the testing facility, which he sent to Plaintiffs' counsel on October 17. Doc. 100-5 at 5. The report did not support that the rivets in the exemplar step were defective so at that time, Plaintiffs decided they needed to test the rivets in the actual step at issue. *Id.*

On October 27, Plaintiffs emailed Defendants, letting them know that on November 17, they would be removing two rivets from the steps at issue for testing. Doc. 100-5 at 96-100. On November 3, Defendants objected that discovery had closed and that Plaintiffs could have conducted such testing at any time during the last year and a half. *Id.* Plaintiffs responded that their email was a "notice," not a "request," and that testing would go forward whether or not Defendants decided to participate in crafting a testing protocol or to attend the inspection. *Id.* Winnebago retorted that any change to the steps would amount to spoliation. *Id.*

Defendants filed motions for summary judgment on November 7, 2022. Docs. 80, 82. A few days later, they filed the current motion for a protective order to prohibit

---

[4] I note that when Plaintiffs were emailing Winnebago and Lippert about links to the replacement step *after* Plaintiffs had already ordered the step, Plaintiffs did not reveal that they had found the step on their own, nor seek to confirm with Defendants that the ordered step was indeed the correct one.

Plaintiffs' planned destructive testing. Doc. 91. Plaintiffs resisted (Doc. 100), and Defendants filed a reply (Doc. 101).

## II. DISCUSSION

Defendants move for a protective order under Federal Rule of Civil Procedure 26(c)(1), which provides that "[a] party . . . from whom discovery is sought may move for a protective order," and "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Defendants also cite Rule 34, which allows a party to request to "test" "any designated tangible things" "in the responding party's possession, custody, or control."[5] Courts have adopted a four-factor balancing test when determining whether to allow destructive testing under Rule 34:

> (1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case;
> (2) whether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way;
> (3) whether there are any less prejudicial alternative methods to obtain the sought after evidence; and
> (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial.[6]

Here, as Plaintiffs note, no discovery is sought from Defendants; Plaintiffs own the RV step they wish to test. The issue is that the RV step is a key piece of evidence in this case, and Plaintiffs' planned testing will destroy it. As cases cited by Defendants illustrate, parties should still seek permission to conduct destructive testing of evidence in their possession, as destroying key evidence could risk "the consequences that may

---

[5] **Fed. R. Civ. P. 34(a)(1)(B)**.

[6] ***White v. Cooper Tools, Inc.***, No. CIV. 06-4272, 2010 WL 1418244, at *3 (D.S.D. Apr. 6, 2010) (quoting ***Conway v. Kaz Inc.***, No. 09-CV-10065-DT, 2009 WL 3698561, at *2 (E.D. Mich. Nov. 4, 2009)), *unmodified on reconsideration,* 2010 WL 1462559 (Apr. 9, 2010).

6

befall a litigant deemed to have engaged in spoliation of evidence, such as an adverse inference instruction to the jury or even outright dismissal of the[] case."[7] The same balancing test applies, whether the motion is considered under Rule 26 or Rule 34, or whether the evidence to be destroyed belongs to the testing party.[8]

Defendants' primary objection to destructive testing is the timing. Plaintiffs' expert examined the step in February 2021 and determined at that time that the composition of the rivets could have contributed to their failure, but the rivets had not been tested. In addition, the two defense experts opined in early May 2022 that the cause of the rivet failure could not be determined without metallurgical (destructive) testing of the rivet. Nevertheless, Plaintiffs took no steps at that time to conduct destructive testing, despite their rebuttal expert report being due in early June. Indeed, Plaintiffs did not raise the issue of destructive testing until mid-October 2022, after the close of both expert and fact discovery in this case.

Plaintiffs blame Defendants for the delay, arguing that they intended to test exemplar rivets first, and only if that testing revealed no problem (suggesting no design defect) did they intend to test the actual rivets of the RV step (to see if there was a manufacturing defect). Plaintiffs argue that they requested an exemplar step and rivets in January, but they did not receive the exemplar step until late June due to delays caused by Defendants. But Plaintiffs provide no explanation for why the exemplar step was not tested for more than three months after its receipt. Plaintiffs' expert did not receive the report from the testing facility for the exemplar step until *after* the close of discovery. If Plaintiffs had planned all along to conduct destructive testing only if the exemplar testing showed it was necessary, they should have conducted the exemplar testing earlier in time

---

[7] *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613 (D. Md. 2006); *see also Beauregard v. Cont'l Tire N. Am., Inc.*, No. 3:08-cv-37-J-32HTS, 2009 WL 10705920, at *2 (M.D. Fla. Apr. 9, 2009) (noting that a party's duty to preserve relevant evidence precludes destructive testing without court permission of evidence owned by the testing party).

[8] *Mirchandani*, 235 F.R.D. at 613.

to allow for destructive testing before the close of discovery—or at least informed Defendants of this plan.

As Plaintiffs note, the proposed testing is reasonable and relevant, and Defendants' experts indicated it was necessary to determine the cause of the rivet failure. But Plaintiffs offered expert testimony that (whether it was a design or manufacturing defect) the defective rivet caused the step to fail, so a lack of destructive testing may not prove fatal.

Plaintiffs suggest that Defendants will not be prejudiced by testing at this late stage, arguing that Defendants cannot know whether they wish to redepose Plaintiffs' expert or conduct any supplemental discovery until after Plaintiffs produce their supplemental expert report based on the testing results. I disagree. Defendants Lippert and LCI have already filed motions for summary judgment. Doc. 80-2. The time for expert discovery has long since closed. Allowing Plaintiffs to conduct additional testing and supplement their expert reports will delay this case, as Defendants will likely want to supplement their expert reports in return, in addition to re-deposing Plaintiffs' expert, conducting other additional discovery, and supplementing their summary judgment motions.

Defendants largely resist because Plaintiffs plan to supplement their expert reports as a result of the destructive testing. Here, I would not find a supplemental expert report based on new destructive testing "substantially justified" or "harmless."[9] But Defendants

---

[9] **Fed. R. Civ. P. 37(c)(1)** (a court may exclude untimely expert opinions if the failure to disclose was not substantially justified or harmless); *see* **Wegener v. Johnson**, 527 F.3d 687, 692 (8th Cir. 2008) (factors to consider include "the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony"); *see also* **Trost v. Trek Bicycle Corp.**, 162 F.3d 1004, 1006-09 (8th Cir. 1998) (affirming striking of supplemental expert affidavit based on additional testing as untimely; plaintiff's expert originally indicated that more information would be known with destructive testing but plaintiff declined to conduct such testing until after expert discovery closed and defendant moved for summary judgment); **McPherson v. Fla. Dep't of Corr.**, No. 4:19cv156-MW/MJF, 2020 WL 5805539, at *4 (N.D. Fla. July 16, 2020) (striking supplemental expert report based on testing conducted right before the close of discovery when defendant had three months before the close of discovery in which it could have conducted the testing); **Deutz Corp. v. City Light & Power, Inc.**, No.

do not really claim prejudice resulting from the destruction of the step itself. Experts for both sides determined the rivet caused the step failure simply by examining the step at issue, and if Plaintiffs conduct destructive testing, the jury will not be able to see the failed rivet for themselves. Videos, pictures, and testimony—especially because the experts largely agree—helps minimize any prejudice stemming from the unavailability of the step at trial. Nevertheless, if Plaintiff cannot use the test results or supplemental expert reports at trial, there is no reason not to preserve the step for the jury.

Ultimately, here, I find Plaintiffs' request to conduct destructive testing and supplement its expert reports untimely, as the expert deadlines, discovery deadlines, and dispositive-motion deadlines have all passed, and Defendants would be prejudiced by allowing this new testing at this late stage.[10] Plaintiffs have no reason they did not conduct destructive testing earlier in time; they did not even raise the possibility of conducting destructive testing to Defendants until after discovery had already closed.

---

1:05-cv-3113-GET, 2008 WL 6841146, at *7-8 (N.D. Ga. July 2, 2008) (excluding expert testimony on non-destructive metallurgical testing when plaintiff did not conduct metallurgical testing nor disclose expert during the discovery period).

[10] *Dabney v. Montgomery Ward & Co.*, 761 F.2d 494, 497–99 (8th Cir. 1985) (affirming denial of request to conduct destructive testing as untimely when defendant did not request destructive testing of furnace that allegedly caused fire until "four years after the fire at issue and two years after the first trial of the case"); *Progressive Cnty. Mut. Ins. Co. v. Goodyear Tire & Rubber Co.*, No. 5:19-cv-913, 2021 WL 2043192, at *6-7 (N.D. Ohio May 21, 2021) (holding that untimeliness of request to conduct destructive testing was "a separate legitimate basis upon which to deny the request" when discovery had closed, summary-judgment motions were fully briefed, and plaintiff waited almost a year from receiving defense expert report putting plaintiff on notice to request destructive testing); *Livingston Jr. v. Copart of Connecticut, Inc.*, No. 3:17-cv-2543-JFA, 2020 WL 8167497, at *8 (D.S.C. May 21, 2020) (holding that when plaintiffs collected additional water samples and "submit[ted them] for expert testing only after their expert was deposed and discovery had closed," additional data and supplemental expert opinion should be excluded for untimeliness); *Beauregard*, 2009 WL 10705920, at *2-3 (granting protective order and finding destructive testing and planned supplement to expert opinion untimely when expert discovery had closed and plaintiff provided no explanation why the testing was not conducted before the expert deadline).

### *III.* *CONCLUSION*

The court **GRANTS** Defendants' motion for a protective order (Doc. 91). Plaintiffs are prohibited from conducting destructive testing on the RV step at issue.

**SO ORDERED** on December 15, 2022.

*[signature]*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa